OPINION
{¶ 1} Dennis R. Gibson, Jr., appeals from the denial of his request for documents under the Freedom of Information Act ("FOIA") and the Ohio Public Records Act. For the following reasons, the trial court's judgment will be affirmed. *Page 2 
 {¶ 2} On September 27, 2001, Gibson pled guilty in the Champaign County Court of Common Pleas to one count of rape and one count of gross sexual imposition, both arising out of sexual contact with his daughter. In return, the state dismissed two counts of rape, in violation of R.C.2907.02(A)(1)(b), with specifications, and agreed to remain silent on the issue of consecutive sentencing. On November 9, 2001, the court held a hearing on Gibson's sentence and sexual offender status. The court found that Gibson was a sexual predator, and it sentenced him to nine years in prison for rape and to four years in prison for gross sexual imposition, to be served concurrently.
 {¶ 3} Gibson filed a notice of appeal on October 30, 2002. This appeal was dismissed, as untimely, on December 24, 2002. State v. Gibson, Champaign App. No. 02 CA 36 ("Gibson I ").
 {¶ 4} In July 2004, Gibson filed an application for DNA testing. On October 27, 2004, he filed a motion for judicial release, and on November 12, 2004, he filed a motion to vacate his sentence. On January 29, 2005, the court denied the application for DNA testing, concluding that Gibson was not eligible because he had pled guilty and had already received a prior definitive test. The court denied the request for judicial release, indicating that he was not eligible until he had served five years. The court also denied the motion to vacate his sentence.
 {¶ 5} On May 4, 2005, Gibson moved to withdraw his plea and sought relief from his conviction. Gibson asserted that his counsel had rendered ineffective assistance by ignoring his claim of innocence, refusing to obtain requested exculpatory evidence, coercing a plea, and failing to file an appeal based on actual innocence. Gibson also claimed that the trial court erred in denying his application for DNA testing, and in finding him a sexual predator. The trial court *Page 3 
denied the motion on July 28, 2005. Gibson appealed from the trial court's denial of his motion to withdraw his plea and for post-conviction relief. Upon review, we affirmed the trial court's judgment. State v. Gibson, Champaign App. No. 2005 CA 33, 2006-Ohio-6820
("Gibson II").
 {¶ 6} On July 25, 2006, Gibson filed a request for documents under the Freedom of Information Act and the Public Records Act. He sought his presentence investigation report, the grand jury minutes, and all findings by the court pursuant to R.C. 2317.39. On July 28, 2006, the trial court overruled Gibson's request for documents. The court denied the request for the presentence investigation report, citing to and incorporating a letter in response to a previous request by Gibson for the presentence investigation report. That letter informed Gibson that R.C. 2947.06 and 2951.03 both provide that the presentence investigation report is not a public record. The letter further stated that the use of the presentence investigation report at sentencing complied with the Revised Code. The court denied the request for grand jury minutes, stating that Crim.R. 6(E) controls the secrecy of grand jury proceedings and that Gibson had not met the burden set forth in Crim.R. 6(E). The court further indicated that it was not aware of any findings under R.C.2317.39 that had been presented to the court, and it denied Gibson's request for those findings.
 {¶ 7} The instant appeal followed. Gibson raises four assignments of error on appeal. Stated simply, Gibson asserts that the trial court abused its discretion when it failed to grant his request for the presentence investigation report, the grand jury minutes, and the investigation reports by the Champaign County Child Abuse Response Team ("CART") and the Champaign County Department of Jobs and Family Services ("CCJFS"), which he claims are reports under R.C. 2317.39. *Page 4 
 {¶ 8} As an initial matter, Gibson has sought records under both FOIA, Section 552, Title 5, U.S. Code, and the Public Records Act, R.C. 149.43. FOIA is the federal counterpart to the Public Records Act. State ex rel.Thomas v. Ohio State Univ. (1994), 71 Ohio St.3d 245, 247,643 N.E.2d 126. FOIA "mandates disclosure of records held by a federal agency, unless the documents fall within enumerated exemptions." (Citations omitted) Department of Interior v. Klamath Water Users ProtectiveAssn. (2001), 532 U.S. 1, 7, 121 S.Ct. 1060, 149 L.E.2d 87; Section 552, Title 5, U.S.Code. Because FOIA applies to federal agencies, we need address only R.C. 149.43.
 {¶ 9} The state asserts that Gibson cannot avail himself of R.C.149.43, because he has not shown that the requested documents are needed to support a justifiable claim and only post-conviction remedies are available to him.
 {¶ 10} R.C. 149.43(B)(4) provides:
 {¶ 11} "A public office or person responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction * * * to inspect or to obtain a copy of any public record concerning a criminal investigation or prosecution * * *, unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence * * * with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person."
 {¶ 12} The language of R.C. 149.43(B)(5) is "broad and encompassing," and "clearly sets forth heightened requirements for inmates seeking public records." State ex rel. Russell v. *Page 5 Thorton, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 14. The documents requested by Gibson constitute documents "concerning a criminal investigation or prosecution" subject to the heightened requirements.
 {¶ 13} The state asserts that Gibson has failed to explain how or why these documents call into question the voluntariness of his plea. Gibson appears to have asserted in his request for documents that the prosecutor mislead and withheld exculpatory evidence from the grand jury, thus leading to a wrongful indictment. He further suggests that his prosecution was based on CART's investigation and evaluation of the case, and that he was not provided with a copy of their report and other exculpatory evidence that they and the prosecutor possessed. Finally, Gibson asserts that his sentence was based upon misinformation in the presentence investigation report. Gibson suggests that he should be resentenced due to the error in the presentence investigation report.
 {¶ 14} In its order denying Gibson's request for documents, the trial court did not make a finding as to whether Gibson had demonstrated that the information sought was necessary to support what appeared to be a justiciable claim. Regardless, we agree with the trial court that Gibson was not entitled to the requested documents.
 {¶ 15} As stated by the trial court, a presentence investigation report is not a public record under RC. 149.43(A)(1). State ex rel.Whittaker v. Court of Common Pleas (Feb. 15, 2001), Cuyahoga App. No. 78718; see, also, R.C. 2951.03(D)(1) (contents of presentence investigation report are confidential and not a public record). Moreover, pursuant to R.C. 2951.03, a defendant has no right to review a presentence investigation report after sentencing. State ex rel.Sharpless v. Gierke (2000), 137 Ohio App.3d 821, 739 N.E.2d 1231. Accordingly, *Page 6 
the trial court did not err in denying Gibson's request for a copy of the presentence investigation report.
 {¶ 16} Gibson was also not entitled to the grand jury minutes. "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." State v. Greer (1981), 66 Ohio St.2d 139, 420 N.E.2d 982, at paragraph two of the syllabus; see Crim.R. 6(E). A "particularized need" exists "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial * * *." State v. Sellards (1985), 17 Ohio St.3d 169, 173, 478 N.E.2d 781,785; State v. Davis (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925. The disclosure of grand jury testimony is governed by Crim.R. 6(E), and the decision whether to release grand jury testimony is within the trial court's discretion. Greer, supra, at paragraph one of the syllabus.
 {¶ 17} The Supreme Court of Ohio has repeatedly stated that a defendant does not present a particularized need for grand jury testimony by attacking the indictment on the ground that the grand jury acted upon inadequate or incompetent evidence and lacked probable cause. E.g., Davis, 38 Ohio St.3d at 365; State v. Coley, 93 Ohio St.3d 253,262, 2001-Ohio-1340, 754 N.E.2d 1129 (citing cases). "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence * * *." Davis, 38 Ohio St.3d at 365, quotingUnited States v. Calandra (1974), 414 U.S. 338, 344-345, 94 S.Ct. 613,38 L.Ed.2d 561. *Page 7 
Moreover, the need to examine the testimony of an adverse witness for inconsistencies is also inadequate to set forth a particularized need.State v. Mack, 73 Ohio St.3d 502, 508-09, 1995-Ohio-273, 653 N.E.2d 329.
 {¶ 18} Gibson's alleged basis for the release of the grand jury minutes — that the minutes are necessary to establish that the prosecutor withheld evidence and misinformed the grand jury — failed to establish a particularized need. Gibson's indictment for rape was valid on its face, and it was not subject to attack by Gibson based on inadequate or incompetent evidence. At the plea hearing, Gibson waived his right to a grand jury on the gross sexual imposition charge. Accordingly, Gibson had no need for the grand jury minutes with regard to that offense. Moreover, if Gibson wished to assert defenses and objections based on defects in the institution of the prosecution or based on defects in the indictment, he was required to raise those prior to trial. Crim.R. 12(C). Gibson failed to challenge the institution of the prosecution or the indictment prior to his plea. Finally, considering that Gibson entered a guilty plea and no trial was held in this case, Gibson cannot reasonably argue that he requires the grand jury minutes in order to ensure that he receives a fair trial. Accordingly, the trial court properly determined that Gibson had not met his burden of demonstrating that disclosure of the grand jury minutes was warranted.
 {¶ 19} Finally, Gibson requested the CART investigation report, CCJFS reports and other reports under R.C. 2317.39. Gibson's request is apparently based, in part, on the following exchange during the sentencing hearing. We note that a new prosecutor took over the case for sentencing.
 {¶ 20} PROSECUTOR: "* * * Secondly, Judge, with regard to sentencing, the State *Page 8 
acknowledges that the Defendant to the probation officer was forthright and honest and forthcoming with his admissions to the sexual assaults occurring. However, the State tempers that acknowledgment with the recognition that when this case was first reported and Children Services and the CART team took it under its investigative wing, that the Defendant was not forthcoming and the victim underwent a polygraph test, which for a child of thirteen or fourteen years of age is demonstrating to her that the system was designed to question the credibility of her statements when in fact she knew what had happened.
 {¶ 21} "The other thing that I think is significant is that it took a rape kit examination, an invasive procedure of vaginal swabs, the collection of evidence, the testing of the DNA before the semen was matched up to be the Defendant's. And only until all of that has been proven, the Defendant then acknowledges his guilt."
 {¶ 22} "* * *
 {¶ 23} THE COURT: "What's the reason that the case is just being brought to the attention of the Court as of July of this year, number one; and then number two, after looking at the presentence I'm wondering what circumstances constitute Count Three and what circumstances constitute Count Four?"
 {¶ 24} "* * *
 {¶ 25} THE PROSECUTOR: "* * * With regard to the length of time it took to bring the case to this Court the State would submit the following that prior to the analysis from BCI coming back the Defendant took the victim down to the police station and from the victim's statement we learn that the victim initially recanted her testimony under threat of physical harm from the Defendant. And so the Assistant Prosecutor, Kevin Talebi, thought that it was even *Page 9 
more important to wait for * * * the laboratory test to come back to assess the victim's credibility and that may also explain why a polygraph test was done on the victim.
 {¶ 26} "The object of the child abuse response team, one of the objects of the child abuse response team is go between the victim, law enforcement and the Prosecutor's office. Victim services and children services are on a number of cases that we have ongoing. It was as a result of a couple of those meetings that I think it was first the Sheriffs Department alerted children services which then alerted the Prosecutor's office that the results had come back and we need to make a decision as to what we're going to do with this case.
 {¶ 27} "The victim advocate has just told me that a month or two prior to Mr. Gibson's indictment the child abuse team re-examined this case and made the decision that it was time to go forward. And so that's what they did.
 {¶ 28} "* * *
 {¶ 29} "With regard to the specific circumstances of those acts, the State is unable to give the Court specifics because through children services we learned that the victim due — the victim was made to give the Defendant oral sex starting at age six. The victim's virginity was taken by the Defendant at age ten when the full blown sexual relationship began.
 {¶ 30} "The victim's friends were reporting to members of the CART team that the victim would be telling her friends about things that she was being taught and the reason that she was being taught these things was because the Defendant wanted the victim to know about the dangers of HIV and AIDS and he thought that by engaging in this conduct he would better prepare her for what was out on the streets. * * *"
 {¶ 31} Gibson also requested records from Ben-El Center, where the victim was *Page 10 
allegedly treated; caseworker records from CCJFS regarding the subsequent behavior of the victim; and "additional reports" that demonstrated that the victim's complaint against Gibson was false.
 {¶ 32} R.C. 2317.39 provides:
 {¶ 33} "Whenever an investigation into the facts of any case, civil or criminal, pending at the time of such investigation in any court, is made, conducted, or participated in, directly or indirectly, by any court or any department thereof, through public employees, paid private investigators, social workers, friends of the court, or any other persons, and a report of such investigation is prepared for submission to the court, the contents of such report shall not be considered by any judge of the court wherein such case is pending either before the trial of the case or at any stage of the proceedings prior to final disposition thereof, unless the full contents of such report have been made readily available and accessible to all parties to the case or their counsel. The parties or their counsel shall be notified in writing of the fact that an investigation has been made, that a report has been submitted, and that the contents of the report are available for examination. Such notice shall be given at least five days prior to the time the contents of any report are to be considered by any judge of the court wherein the case is pending. In the event that a report following any investigation is prepared for submission orally, such oral report shall be reduced to writing prior to the issuance of notice of the availability of such report for examination.
 {¶ 34} "This section does not apply only to the utilization of the contents of such reports as testimony, but shall prevent any judge from familiarizing himself with such contents in any manner unless this section has been fully complied with." *Page 11 
 {¶ 35} In denying Gibson's request for documents, the trial court indicated that it was not aware of any reports covered by R.C. 2317.39. There is no evidence in the record that the CART investigation report and reports by children services were prepared at the direction of the court, were prepared for submission to the court, or were submitted to the court. Rather, the sentencing hearing indicates that CART and children services worked with the prosecutor's office in investigating the victim's allegations and determining when charges against Gibson would be pursued in court. Likewise, there is no evidence that the court directed the preparation of reports by Ben-El Center or received any reports. Accordingly, we find no evidence that the trial court possessed documents submitted under R.C. 2317.39. Accordingly, the trial court did not err in denying Gibson's request for documents under R.C. 2317.39.
 {¶ 36} Moreover, the trial court correctly noted that specific sections of law governed presentence investigation reports and grand jury proceedings. Because R.C. 2317.39 governs reports generally, the presentence investigation reports and grand jury proceedings were not governed by R.C. 2317.39.
 {¶ 37} The assignments of error are overruled.
 {¶ 38} The judgment of the trial court will be affirmed.
 GRADY, J. and GLASSER, J., concur. *Page 1