[Cite as *State v. Baker*, 2018-Ohio-3925.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27818 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-2160 |
| | : | |
| JOHNNY C. BAKER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of September, 2018.

. . . . . . . . . . .

MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ANTHONY R. CICERO, Atty. Reg. No. 0065408, 500 E. Fifth Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Johnny C. Baker appeals from his conviction and sentence following a guilty plea to kidnapping, a first-degree felony.

{¶ 2} Baker advances five assignments of error. First, he contends the trial court erred in failing to be sure that he understood the nature of the charge when he entered his plea. Second, he claims he was "convicted upon an indictment and bill of particulars that contained structural error[.]" Third, he alleges that he received ineffective assistance of trial counsel. Fourth, he asserts that the trial court erred in impermissibly involving itself in plea negotiations. Fifth, he argues that his five-year prison sentence is contrary to law.

{¶ 3} The record reflects that Baker was charged with felonious assault (serious physical harm), domestic violence, and kidnapping for allegedly detaining his girlfriend against her will and beating her. (*See* Indictment, Doc. # 4; Bill of Particulars, Doc. # 55.) Pursuant to plea negotiations, he agreed to plead guilty to kidnapping. In exchange, the State agreed to dismiss the other charges. The parties also jointly recommended a three-year prison sentence. (Doc. # 58; Plea Tr. at 12.) During the plea hearing, the trial court advised Baker that it would impose the agreed sentence provided that his record was as represented, that he cooperate with the PSI process, that he show up for all court appearances, and that he commit no additional crimes before sentencing. (Plea Tr. at 13.) The trial court then accepted the plea and made a finding of guilt. (*Id.* at 13-14.) At that time, regarding the three-year jointly-recommended sentence, the trial court stated: "the Court's in agreement with that, but I'm going to condition my agreements with the recommended sentence on the following conditions." (*Id.*) The conditions were that Baker's prior record was as represented, that he cooperate with the PSI, that he appear

when required and that he commit no criminal violations before sentencing.

{¶ 4} Baker subsequently appeared for sentencing, and at a sidebar conference his counsel suggested a one-week continuance because his client disagreed with the three-year sentence but was uncertain whether to withdraw his plea. Upon resuming open court, the court, probably incorrectly,[1] stated:

> THE COURT: Now, there's nothing -- and I think I told you at that time, nothing in your offer or your agreement with the State binds me in any way.
>
> THE DEFENDANT: Correct.
>
> THE COURT: All right. That's your understanding as well?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is that your understanding as well?
>
> THE DEFENDANT: Yes, sir.

{¶ 5} Baker then claimed he had misunderstood the three-year prison sentence. He told the trial court he thought he was going to receive three years of community control. (Sentencing Tr. at 8.) Defense counsel indicated that Baker did not necessarily want to withdraw his plea, but he wanted to argue for community control. The trial court continued the matter to allow Baker to consider how he wanted to proceed and to move to withdraw his plea if he desired.

{¶ 6} When the trial court reconvened the proceedings a week later, Baker stated that he did not want to withdraw his plea. Rather, he wanted to keep his guilty plea to one count of kidnapping, but he wanted to withdraw his agreement to a jointly-recommended

---

[1] There is no indication whether the conditional terms of the court's acceptance of the agreement were met, although Baker was in custody and a PSI was prepared. Nevertheless the court later, several times, indicated it would follow the agreement.

three-year prison sentence. Baker advised the trial court that he wanted an opportunity to argue for community control. The trial court explained his options:

Good morning. Now Mr. Baker, we're here today because last week we had a discussion about your options in proceeding today. And the options we had laid out were three—well, of three types. To proceed as you had urged and agreed under the three year agreement as option A.

Option B with two subsections was to withdraw your plea. To then I would schedule a hearing and if I allowed your plea to stand, you would proceed accordingly or if you—if I allowed your plea to be withdrawn and then grant your motion, then you would proceed to trial on all the issues.

The third option, Option C that was presented based on agreement by the parties—or both of you and the State was that you proceed with the agreed plea to the single count of kidnapping, felony the first degree. But that your sentencing range be opened up for argument and persuasion on the entire sentencing range which is probation or community controlled sanctions, all the way to the maximum term of incarceration of 11 years. And including the fine from zero to $20,000.

With that said, my understand that day and my recollection of that day was that you had elected on the record to proceed with the third option, Option C, to continue with your plea to the first degree kidnapping charge with the range of arguments for penalty from the probation to 11 years, correct?

THE DEFENDANT: Yes, sir.

THE COURT: Is that still your wish and election today?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Has anyone pressured you or threatened you or forced you to do so?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Has anyone promised you anything in order to get you to do so?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone promised you anything to get you --

THE DEFENDANT: No, sir.

THE COURT: All right. That's your free and voluntary choice?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about those options or your election to proceed today?

THE DEFENDANT: No, sir.

THE COURT: Okay. [Defense counsel], do you have any concerns or statements you'd like to make on that election of the three options?

[DEFENSE COUNSEL]: Your Honor, I advised Mr. Baker again and again and when he accepted the plea deal I thought it was in his best interests, the three years agreed upon sentence. Mr. Baker and I discussed that at length. He has now decided to open it up from anywhere from community controlled sanctions all the way up to maximum 11 years. We've discussed that at length as well. It's his decision. It's not my decision but I advised him

that this wouldn't be the route I would suggest.

(Sentencing Tr., 11-22-2017 at 10-12.) The trial court continued by specifically indicating to Baker that he could be sentenced anywhere from community control to eleven years in prison and warning him that there was a presumption that prison would be imposed unless the court could make "certain findings" otherwise. Baker indicated that he understood. (*Id.* at 11-15.) The trial court then assured that he was making his decision freely and voluntarily. Baker repeatedly indicated that he understood and wanted to proceed with the entire range of sentencing options available. (*Id.* at 14-16.)

{¶ 7} The trial court granted Baker's request and heard sentencing arguments from the prosecutor, defense counsel, and Baker. The State sought an eleven-year prison sentence, whereas defense counsel and Baker advocated for community control. After considering the parties' arguments, sentencing memoranda, a letter, and a PSI report, the trial court imposed a five-year prison sentence. The PSI report indicated that Baker had beaten his live-in girlfriend several times over the course of a few days and had shoved her head through a window. She had a left eye orbital blowout fracture and severe bruising to her shoulders, chest, neck, eyes, face and lips. The trial court specifically addressed several of the statutory seriousness and recidivism factors. It also noted that it had considered the statutory principles and purposes of sentencing. (*Id.* at 23-25.)This appeal followed.

{¶ 8} In his first assignment of error, Baker contends the trial court did not comply with Crim.R. 11(C)(2)(a) because it failed to assure that he understood the nature of the kidnapping charge before accepting his guilty plea.

{¶ 9} Baker pled guilty to violating R.C. 2905.01(A)(2), which as relevant here

requires restraint of a person's liberty for the purpose of facilitating the commission of any felony. Baker maintains that he could not have understood the nature of this charge because neither the indictment nor the bill of particulars specified any underlying, predicate felony, and the prosecutor's recitation at the plea hearing did not identify one. That being so, Baker argues that his affirmative response when asked whether he understood the nature of the kidnapping charge was insufficient.

{¶ 10} Upon review, we find Baker's argument to be without merit. During the plea hearing, he acknowledged that he and his attorney had discussed "what the State would have to prove in order for [him] to be found guilty of [kidnapping]." (Plea Tr. at 9.) We note too that his indictment charged only two felonies, kidnapping and "felonious assault (serious harm) F2," both of which occurred at the same time "[b]etween the dates of July 7, 2017 through July 9, 2017." When addressing the kidnapping charge, the bill of particulars specified that "[d]uring the above dates the Defendant did cause serious physical harm to [the victim] and held her against her will." (Doc. # 55 at 3.) Based on Baker's statements at the plea hearing, the indicted offenses, and the information provided by the bill of particulars, which effectively identified felonious assault as the underlying felony supporting the kidnapping charge, we are unpersuaded that he did not understand, or could not have understood, the nature of the kidnapping charge when he pled guilty. The first assignment of error is overruled.

{¶ 11} In his second assignment of error, Baker alleges "structural error" based on the omission from his indictment of a specified underlying, predicate felony to support the kidnapping charge.

{¶ 12} Once again, we find Baker's argument to be unpersuasive. As a threshold

matter, his failure to raise this alleged defect in the indictment below waives all but plain error. An objection to an indictment that is not raised prior to trial or entering a plea as required by Crim.R. 12(C)(2) is waived unless it constitutes plain error. *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 66 (2d Dist.), citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 26; *State v. Gibson,* 2d Dist. Champaign No. 2006 CA 26, 2007-Ohio-4547, ¶ 18. Reversal for plain error is warranted only when, "but for the error, the outcome of the trial would have been different." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996.) Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 13} We see no error in Baker's indictment—plain, structural, or otherwise. His argument is foreclosed by *State v. Skatzes.* In *Skatzes*, the Ohio Supreme Court rejected an argument that the defendant's indictment on a kidnapping charge was defective because it did not identify the underlying felony. The Ohio Supreme Court held that the indictment properly charged an offense because it tracked the language of the statute. *Id.* at ¶ 26-27. In addition, with regard to the indictment's failure to specify the felony underlying the kidnapping charge, the *Skatzes* court noted that a bill of particulars properly was used to supply this information. *Id.* at ¶ 27-30. The court explained: "Here, the omission of the underlying felony in the indictment was remedied because the bill of particulars identified the underlying felony, as is permitted where the indictment sufficiently tracked the wording of the kidnapping statute." *Id.* at ¶ 30.

{¶ 14} Baker argues that our decision should be controlled by *State v. Buehner*,

110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, rather than *Skatzes*. The defendant in *Buehner* was indicted for ethnic intimidation under R.C. 2927.12(A), which states: "No person shall violate section 2903.21, 2903.22, 2909.06, or 2909.07, or division (A)(3), (4), or (5) of section 2917.21 of the Revised Code by reason of the race, color, religion, or national origin of another person or group of persons." Buehner's indictment stated that he violated the ethnic intimidation statute by virtue of violation of "Section 2903.21 of the Revised Code" without indicating that nominally the predicate offense was aggravated menacing and without containing the elements of aggravated menacing. The syllabus of *Buehner* states: "An indictment that tracks the language of the charged offense and identifies a predicate offense by reference to the statute number need not also include each element of the predicate offense in the indictment."

{¶ 15} We distinguish *Buehner* for at least three reasons. First, the defendant in *Buehner* specifically raised a challenge to the sufficiency of the indictment in the trial court, which dismissed the charge, and the appellate court affirmed. The Ohio Supreme Court reversed. Because Buehner raised the indictment issue, the Ohio Supreme Court and appellate court decisions were not plain-error analyses. Second, the *Buehner* indictment, like Baker's, did track the applicable statutory language. The ethnic intimidation statute referenced underlying predicate offenses by statute numbers, i.e. "2903.21," which is exactly what was included in the indictment. The statute in Baker's case, R.C. 2905.01(A)(2), prohibits restraining another's liberty for several purposes, one of which is "(2) To facilitate the commission of any felony or flight thereafter." Baker's indictment tracked the specific statutory language, stating that he "did remove another from the place where she was found or restrain her of her liberty, for the purpose of

facilitating the commission of a felony or flight thereafter." The kidnapping statute generically refers to "a felony" rather than a statutory number. Therefore, applying *Buehner* and *Skatzes*, both of which tracked their respective statutory language, to the specific statutory language in this record, we believe the holdings in those cases are in harmony rather than in opposition.

{¶ 16} Finally, in the present case, the bill of particulars addressed the kidnapping charge and alleged that Baker had "cause[d] serious physical harm to the victim." This language was sufficient to inform Baker that felonious assault, the only other felony in the indictment, was the predicate felony underlying the kidnapping charge. Reading the indicted charges in pari materia provided additional notification that felonious assault was the predicate felony underlying the kidnapping charge. *Compare State v. Smith*, 8th Dist. Cuyahoga No. 83007, 2004-Ohio-3619, ¶ 27 ("Moreover, based on the inclusion of the other felonies in the indictment, i.e., aggravated burglary and aggravated robbery, and the specific facts contained in the bill of particulars, we find that Smith was adequately notified of the underlying felonies supporting the kidnapping charges.") Based on the specific wording in this indictment, the applicable statute, the lack of objection, the bill of particulars and record from the guilty plea itself, we conclude that Baker's second assignment of error should be and is overruled.

{¶ 17} In his third assignment of error, Baker alleges ineffective assistance of counsel based on his attorney's failure to seek dismissal of the kidnapping charge, presumably for the reasons addressed in the first two assignments of error. In our analysis of Baker's first two assignments of error, however, we concluded that the kidnapping charge in the indictment was not defective. That being so, defense counsel did not provide

ineffective assistance by failing to seek its dismissal. The third assignment of error is overruled.

{¶ 18} In his fourth assignment of error, Baker contends the trial court erred in impermissibly involving itself in plea negotiations. His argument focuses on the trial court providing allegedly conflicting information about his sentence. Baker asserts that the trial court originally told him he would receive a three-year prison sentence, then told him that it was not bound by that agreement, then sentenced him to five years. Baker also argues that an entirely new plea hearing was required when the initial plea agreement was modified by making the entire range of sentencing options available.

{¶ 19} Upon review, we find no merit in Baker's arguments. As set forth above, the trial court initially agreed to go along with the parties' jointly-recommended three-year prison term that was part of a plea bargain. When the parties later appeared in court, Baker expressed concerns about the sentencing agreement. The trial court recessed the case and gave him a week to think about how he wanted to proceed. When the case reconvened on November 22, 2017, Baker repeatedly stated that he wanted to proceed on his guilty plea but with the entire range of sentencing options available to the trial court. In essence, Baker wanted to waive the agreed-sentence portion of his plea agreement. The trial court discussed the issue with Baker and ensured that he was making this decision knowingly, intelligently, and voluntarily. (Sentencing Tr. at 12-16.) Defense counsel also stated that he had discussed the issue with Baker and had advised against Baker's course of action. Baker acknowledged receiving this advice. (*Id.* at 12-13.) Based on our review of the record, we see no improper actions by the trial court. We also see no need for an entirely new plea hearing. Baker repeatedly insisted that he *did not* want

to withdraw his prior guilty plea. He only wanted the trial court to be free to consider all potential sentences. After painstakingly assuring that Baker understood what he was doing, the trial court granted his request. We see no error. The fourth assignment of error is overruled.

{¶ 20} In his fifth assignment of error, Baker contends his five-year prison sentence is contrary to law. He argues:

> * * * Appellant would submit that it is otherwise contrary to law for a trial judge to agree to a sentence of 3 years and then subsequently sentence the individual to 5 years. There is no logical basis for the prosecution to agree to a 3 year sentence and then argue that the appropriate sentence is 11 years. A system that allows this to happen does not have rationality in the rule of law.

(Appellant's brief at 9-10).

{¶ 21} Upon review, we conclude that Baker's five-year prison sentence for first-degree felony kidnapping is not contrary to law. Once Baker waived the agreed-sentence aspect of his plea agreement, the prosecutor was free to advocate for any lawful sentence. In any event, we fail to see the relevance of the prosecutor's argument for an eleven-year sentence. The trial court only imposed a five-year sentence, and that is what Baker's assignment of error challenges.

{¶ 22} The five-year sentence is not contrary to law because the trial court complied with the applicable statutes before imposing the sentence, which was within the authorized statutory range. Although Baker complains about the trial court deviating from the previously-agreed three-year sentence, he took that risk when he waived the

sentencing aspect of the plea agreement and asked the trial court to select a sentence from the entire range of available options. In essence, Baker exchanged the certainty of a three-year sentence for the hope of convincing the trial court to grant him community control. The risk in doing so was that the trial court would review the record, including the PSI report, and conclude that Baker's offense warranted a prison term longer than three years. That is why defense counsel advised Baker against waiving the agreed-sentence aspect of his plea. The fact that Baker's gamble did not pay off does not make his sentence contrary to law.

{¶ 23} Finally, Baker asserts in passing that his five-year sentence constitutes cruel and unusual punishment under the Eighth Amendment. He provides no substantive argument for this claim, which we find to be unpersuasive. As noted above, the five-year sentence was well within the authorized statutory range, and the trial court was not bound to impose a three-year sentence because Baker knowingly, intelligently, and voluntarily waived that aspect of his plea agreement. Accordingly, the fifth assignment of error is overruled.

{¶ 24} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

DONOVAN, J., dissents:

{¶ 25} I disagree with the majority's resolution of the fourth assignment of error. Baker was sentenced based upon misinformation, incomplete information, and an illusory inducement, all of which prevented Baker from exercising a rational calculus of how to

proceed.

**{¶ 26}** On October 31, 2017, Baker, the State, and the trial court reached a plea agreement, whereby Baker would plead guilty to kidnapping and would receive a three-year prison sentence. Guilty pleas must be "accorded a great deal of finality" and "solemn declarations in open trial court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 71, 74, 97 S.Ct. 162, 152 L.Ed.2d 136 (1977). We have repeatedly stated that, when the trial court promises a certain sentence at a plea hearing, that promise "becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary." *E.g., State v. Dehart*, 2018-Ohio-865, __ N.E.3d __, ¶ 14 (2d Dist.); *State v. Anderson,* 2d Dist. Montgomery No. 26056, 2014-Ohio-4699, ¶ 9; *State v. Gilroy,* 195 Ohio App.3d 173, 2011-Ohio-4163, 959 N.E.2d 19, ¶ 22 (2d Dist.); *State v. Layman,* 2d Dist. Montgomery No. 22307, 2008-Ohio-759, ¶ 15, quoting *State v. Bonnell,* 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-5882.

**{¶ 27}** A plea agreement is a contract between the parties. *Dehart* at ¶ 14. A breach of a term in a plea agreement entitles the non-breaching party to rescission or specific performance. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Layman.* Crim.R. 32.1 further allows a defendant to seek to withdraw a plea. I question whether there can be a "waiver" of the original written plea agreement, which was done in this case.

**{¶ 28}** However, even if such a "waiver" were possible, Baker's waiver would be invalid, as he was not informed of all the terms of the revised plea, and his options were misstated. The trial court did not have the power to revise the contract when all the parties -- in this case, Baker -- did not agree to all the terms of the modification.

Specifically, neither the trial court nor the State advised Baker that, if he chose "Option C," the State would so radically alter its recommendation and that the State would, in fact, seek a maximum 11-year sentence (seemingly for no other reason than Baker had indicated his confusion when the case was first called for sentencing, believing community control was an option).

{¶ 29} Baker initially expressed a desire to withdraw his plea on November 14, 2017, but misinformation and incomplete information prevented Baker from exercising a rational calculus of how to proceed. Although the existing plea agreement included an agreed three-year sentence, the trial court incorrectly told Baker that the trial court had not entered an agreement for a particular sentence. The trial court even sought and obtained Baker's acquiescence to this mischaracterization with the following exchange:

THE COURT: * * * [W]e're here today for the purpose of sentencing on a presentence investigation conducted because you elected to change your plea a couple weeks ago to a plea of guilty and accept the State's offer of a recommendation to me of a prison term.

Now there's nothing – and I think I told you at that time, *nothing in your offer or your agreement with the State binds me in any way.*

THE DEFENDANT: Correct.

THE COURT: All right. That's your understanding as well?

THE DEFENDANT: Yes.

THE COURT: Is that your understanding as well?

THE DEFENDANT: Yes, sir.

(Emphasis added.) (Sentencing Tr. p. 6-7).

**{¶ 30}** The trial court's misstatement was further exacerbated by the court's providing Baker a second option, which suggested that the trial court could impose more (or less) than the binding plea agreement of three years in the event Baker stood on his original plea. This was inaccurate, as the only two viable options at this juncture were specific performance (3 years in prison) or rescission. The trial court told Baker:

THE COURT: Okay. Now with that, I'm hear [sic] now you're telling me that you don't like that offer. **[More or less than three years?]** Your options are going to be as follows: You can file a motion to withdraw – well, first off, you can proceed with sentencing today. Make statements on your own behalf that may be a mitigation of sentence. And what I mean by that is may lessen the sentence. Alternatively, I've had people that have aggravated and made the sentence worse based on what they tell me. **[More than the three year guarantee?]**

That said, you could also request that your plea be withdrawn. At which point, I'll set a hearing to determine whether or not to allow the plea to be withdrawn. And if your plea is withdrawn and I grant it – well, if I deny it then you're back – we're back here for sentencing. If I grant the motion to withdraw your plea, then it is up to you to set an agreement with the State again for a future deal. Or what I – what most oftentimes happens I believe in these is that the State will then set – will set your case for trial. And we will proceed to trial at that point. Do you understand? Do you understand those options?

THE DEFENDANT: Yes.

THE COURT: All right.

THE DEFENDANT: What I was understanding when we were here last time that I was getting probation for the three years, Your Honor. I would've never pled out to prison for this.

THE COURT: I can tell you I am very clear on what the – you may be – you are eligible to be sentenced to – which I don't think in your case you are eligible, is it?

THE DEFENDANT: Yeah, I do –

[THE PROSECUTOR]: He would be eligible for (indiscernible) sanctions.

THE COURT: All right. So there is an eligibility but it's an eligibility. But do you have a recommendation and agreement between the two of you? So the question is whether or not you want to proceed today?

THE DEFENDANT: No, sir. Not if I'm eligible for probation and stuff. I – I -- this is totally all blew out of proportion, Your Honor. I mean –

THE COURT: All right. I'm going to stop you there then. What it sounds like you're asking is to file a motion to withdraw your plea of guilty.

THE DEFENDANT: Yes, sir.

THE COURT: To proceed on the charges. So what I'm going to do is by law I've set the case for a hearing on whether or not to grant your motion. And so we'll set that hearing. * * *

(Questions in bold added for emphasis.) (Sentencing Tr. p. 7-9.)

{¶ 31} In this exchange, the trial court provided Baker with deeply flawed choices. The court's first choice misinformed Baker regarding the binding plea agreement. The

court's second choice contained an editorial comment that implied that if the motion to withdraw his plea were granted, the State "will as most often happens, set our case for trial," a choice that was, in fact, Baker's to make, as he could still plead guilty to all indicted counts and/or attempt to negotiate further.   Under the circumstances, such comments by the court suggest that the State can compel a trial.

{¶ 32} This sort of judicial intervention and mischaracterization ostensibly had a coercive impact on Baker's decision whether to seek withdrawal of his plea or proceed as agreed.

> The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. * * * [A judge's] awesome power to impose a substantially longer or even maximum sentence in excess of that proposed [or agreed upon] is present whether referred to or not.

*United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y. 1966).

{¶ 33} An essential point is that particular facts and circumstances matter, and Baker had an absolute right to be fully informed and correctly informed before exercising any choice; otherwise his decision to rest on his initial plea with modified and unknown oral terms cannot be deemed knowing, intelligent, or voluntary.

{¶ 34} The record establishes that, on the original sentencing date of November 14, 2017, Baker indicated he wanted to withdraw his plea due to his purported confusion and perhaps the trial court's unexplained repudiation of its agreement to a three-year prison term.[2]   In fact, defense counsel was directed by the trial court to file a motion to

---

[2] Significantly, neither the State nor the defense lawyer reminded the trial court it agreed

withdraw the plea at the November 14, 2017 dispositional hearing.

THE COURT: All right. I'm going to stop you there then. What it sounds like you're asking is to file a motion to withdraw your plea of guilty.

THE DEFENDANT: Yes, sir.

THE COURT: To proceed on the charges. So what I'm going to do is by law I've set the case for a hearing on whether or not to grant your motion. And so we'll set that hearing. Ms. Scott, when is the next available time we can have that?

And [Defense Counsel] is this something that you can continue to represent Mr. Baker on or are you going to be a witness in that case?

[DEFENSE COUNSEL]: I should be able to represent him, Your Honor. I'm not a witness in this matter.

THE COURT: All right. Well, I would recommend that you take a look at that. Determine whether or not you can or if I need to appoint another – because you are appointed; is that right?

[DEFENSE COUNSEL]: I am.

THE BAILIFF: You're going to continue this week because if we have to appoint, we'll need new counsel's schedule –

THE COURT: Okay.

THE BAILIFF: -- in order to get a hearing.

THE COURT: So we'll be here – what we'll do is we'll continue this case for

---

to a three year prison term. One or both should have. Furthermore, the pre-sentence investigative report noted the trial court's agreement to the three year prison term.

one week. We'll be back on docket in one week's time. Mr. Fogt, if you would look to determine whether or not you can proceed or if you need to withdraw as counsel and I need to appoint new counsel and have new counsel present for our continued time in one week. We'll do that. I am going to give back these letters. I'm not going to review them at this time.

And Mr. Fogt, if you would please just for the purposes of the record, file a motion to withdraw the plea so we have that as part of the record.

[DEFENSE COUNSEL]: Yes, sir. Thank you.

(Sentencing Tr. p. 8-9.)

**{¶ 35}** When Baker returned to the trial court on November 22, 2017, the trial court compounded its previous errors by again misstating Baker's original plea agreement, which the trial court characterized as Option A, and introduced a new option. This time, the trial court seemed to suggest that Baker could "urge" a particular outcome for Option A, once again disregarding the parties' binding plea agreement, which the trial court had the week before disavowed existed in the first instance. Option C was an entirely new option, not presented by the State or the trial court on November 14, 2017, to retain the original plea with modified terms. Significantly, Baker lacked critical information on Option C, namely that the State would now be seeking an 11-year maximum sentence.

THE [COURT][3]: Good morning. Now Mr. Baker, we're here today because last week we had a discussion about your options in proceeding today. And the options we had laid out were three – well, of three types. To

---

[3] The transcript states that the speaker is the defendant. Read in context, it is apparent that the trial court is speaking, not the defendant.

proceed as you had urged and agreed under the three year agreement as Option A.[4]

Option B with two subsections was to withdraw your plea. To [sic] then I would schedule a hearing and if I allowed your plea to stand, you would proceed accordingly or if you – if I allowed your plea to be withdrawn and then grant your motion, then you would proceed to trial on all the issues.

The third option, Option C that was presented based on agreement by the parties – or both of you and the State was that you proceed with the agreed plea to the single count of kidnapping, felony the first degree. But that your sentencing range be opened up for argument and persuasion on the entire sentencing range which is probation or community controlled sanctions, all the way to the maximum term of incarceration of 11 years. And including the fine from zero to $20,000.

With that said, my understand[ing] that day and my recollection of that day was that you had elected on the record to proceed with the third option, Option C, to continue with your plea to the first degree kidnapping charge with the range of arguments for penalty from the probation to 11 years, correct?

THE DEFENDANT: Yes, sir.

(Sentencing Tr. p. 10-11.)

{¶ 36} Option C had the "lure" of possible community control sanctions, but this is

---

[4] Although the majority suggests the trial court here is indicating a willingness to impose a three-year sentence, that is not clear, particularly since at the original dispositional hearing the court repudiated it.

nothing short of an illusory inducement under the totality of circumstances. The trial court was well aware from the presentence investigation that this case carried a presumption of prison and that Baker had a criminal history. In fact, the trial court's repudiation of its three-year agreement without explanation inferentially suggests the court had already concluded, based on the presentence report, that three years was inadequate. The trial court also ostensibly knew and failed to advise Baker that the State would now recommend the maximum 11-year term. (The State's sentencing memorandum was filed on November 21, 2017, prior to the hearing.) Thus, any so-called "waiver" of the original plea was not only wholly invalid and unintelligent, but procedurally extremely unorthodox.

{¶ 37} Furthermore, the record reflects that when the trial court attempted to confirm Option C, Baker was understandably confused.

THE COURT: All right. And is your election to proceed today with the argument [sic] of opening this to any –

THE DEFENDANT: *No, Sir.* I agree to what you were saying to probation and the three year – 3 to 11 with the probation. I have an option with the probation with the last option.

THE COURT: You – there – your election is at this point to – you – so for my understanding, is you want to make an argument to me –

THE DEFENDANT: *No, sir.*

THE COURT: -- about –

THE DEFENDANT: I don't – no, I want to go with it. What you said the last one.

THE COURT: The third option?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Then that's the – somewhere between probation and 11 years.

THE DEFENDANT: Correct.

THE COURT: And what happens by that – what I mean by argument is the State will present its argument they – what sentence they think I should impose. Your attorney will make his arguments and statements about what sentence he thinks I should impose. And then finally, you will make your statement and argument as to what sentence you think I should impose.

(Emphasis added.) (Sentencing Tr. p. 13-14.)

{¶ 38} Notably, the State, defense counsel, and the trial court all failed to inform Baker that the State would be recommending 11 years if Option C were elected. It was only after Option C was selected by Baker that the State pronounced:

[THE PROSECUTOR]: * * * Given that there are no factors on the recidivism and all relevant factors point in favor to the State. The State is asking for a prison term to be implemented of 11 years for the kidnapping as a result of the plea deal where we had dismissed the remaining felonies and misdemeanor at that point in time. That's where the State is willing to stand, Your Honor.

(Sentencing Tr. p. 18.)

{¶ 39} It is unseemly that the State would agree to three years and then so vigorously recommend 11 years. In my view, the State has a responsibility to the

community, to the victim, and to the trial court to recommend a disposition of the cases that it believes to be fair and reasonable. Is the cost of an illusory consideration of community control a demand for the maximum sentence of 11 years and a characterization of the offense as the worst form of the offense, whereas the same offense, two weeks earlier merited just the minimum upon a plea to the identical count? If indeed Option C was consideration of community control, the State substantially and materially undercut the essence of the "revised" plea agreement.

{¶ 40} After this recommendation of 11 years, Baker was not asked if his plea was indeed guilty, nor did he execute a new plea form with all revisions, including the State's request for 11 years, laid out on the record with clarity.

{¶ 41} I reiterate, the manner in which Baker purportedly "waived" a new plea colloquy under Crim.R. 11 is highly improper and cannot be characterized as knowing, intelligent and voluntary. The record, in my view, establishes Baker did not understand the full significance of the purported "waiver."

{¶ 42} As the United States Supreme Court has recognized, whether a trial court impermissibly participated in a plea agreement depends on "the particular facts and circumstances," which "should be assessed, not in isolation, but in light of the full record." *United States v. Davila,* 569 U.S. 597, 611-612, 133 S.Ct. 2139, 186 L.Ed.2d 139 (2013). The judge herein ultimately transformed himself from an impartial arbiter to a participant in a new proposal (Option C), one made after November 14, 2017 and which did not properly acknowledge specific performance [5] or complete rescission as the only

---

[5] In the situation where the trial court declines to follow its own sentencing commitment, the reasons must be set forth on the record by the trial court. *See United States v. Skidmore,* 998 F.2d 372, 375 (6th Cir.1993).

legitimate options.

{¶ 43} Imperfectly articulated oral remarks by the trial court unwittingly set forth a series of traps for Baker:

- "DOOR ONE" (Option A): incorrectly stated original plea agreement

- "DOOR TWO" (Option B): discouraged withdrawal of the plea, suggesting the State could compel a trial

- "DOOR THREE" (Option C): revision of the original agreement with incomplete advisement of all consequences (the 11-year recommendation by the State was not set forth before Baker made his choice, and no new plea was entered pursuant to Crim.R. 11.)

{¶ 44} The analogy of plea agreements to private contracts has been characterized as far from precise. *See generally Wisconsin v. Scott,* 230 Wis.2d 643, 655, 602 N.W.2d 296 (Sept. 29, 1999). The constitutional implications providing the framework to Baker's "contract rights" in a plea agreement demand broader and more vigorous protection than those afforded a party in a private civil/commercial contract.

{¶ 45} I would reverse and remand for specific performance of the original plea agreement of October 31, 2017 or for a hearing on rescission providing Baker a fully and accurately informed election.

{¶ 46} Lastly, I would urge the Ohio Supreme Court to consider the issue of "waiver" the majority suggests exists here, as it is conceptually unprecedented in my view, wholly unorthodox, and fatally flawed. If a plea bargain is to be set aside, it should be set aside in its entirety, not piecemeal. At a minimum, on this record, Baker's choice was not a knowing, intelligent and voluntary election.

Copies sent to:

Michael P. Allen
Anthony R. Cicero
Hon. Erik R. Blaine