The STATE of Ohio, Appellee,

v.

YSLAS, Appellant.

[Cite as *State v. Yslas,* 173 Ohio App.3d 396, 2007-Ohio-5646.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 05CA43.

Decided Oct. 19, 2007.

398

Anthony E. Kendell, Miami County Prosecuting Attorney, for appellee.

Kent J. Depoorter, for appellant.

---

GRADY, Judge.

{¶ 1} Defendant, Ramon Yslas, appeals from his conviction and sentence for possession of marijuana and cocaine.

{¶ 2} On March 6, 2005, Trooper Eldridge of the Ohio Highway Patrol was checking a rest stop on northbound I-75 in Miami County, Ohio, when he observed a pickup truck with darkly tinted windows parked in the far corner of the rest area lot. Trooper Eldridge ran the vehicle's Nevada license plate and

began to park his marked cruiser next to the truck. Before Eldridge could get a response from his dispatcher, however, the truck pulled away and left the rest stop, heading north on I–75. Defendant was a passenger in the truck.

{¶ 3} Trooper Eldridge followed the truck and subsequently stopped it for a marked-lanes violation. During the course of the traffic stop, the officer had reasonable suspicion of criminal activity other than the traffic violation, and his suspicion escalated as a result of the excessive nervousness of both the driver and defendant and their conflicting stories about where they had come from, where they were going, and their purpose for the trip. As a result, the officer called for a drug-detection dog to be brought to the scene.

{¶ 4} The dog alerted to the truck. A search of the passenger compartment by police revealed powder cocaine and a large quantity of cash in a "fanny pack" that defendant was wearing. A search of the truck bed disclosed several hundred pounds of marijuana, which defendant admitted belonged to him.

{¶ 5} Defendant was indicted on one count of possession of marijuana in an amount exceeding 20,000 grams, R.C. 2925.11(A) and (C)(3)(f), and one count of possession of crack cocaine in an amount exceeding five grams but less than 25 grams, R.C. 2925.11(A) and (C)(4)(b).

{¶ 6} Defendant filed a motion to suppress evidence. Following a hearing, the trial court overruled defendant's motion to suppress. Defendant then withdrew his former pleas of not guilty and entered pleas of no contest to both charges in exchange for an agreed-upon total sentence of eight years.

{¶ 7} The trial court accepted defendant's pleas, found him guilty, and sentenced him to a mandatory eight-year term on the possession-of-marijuana charge and 17 months on the possession-of-cocaine charge, to be served concurrently. Defendant timely appealed to this court from his conviction and sentence.

FIRST ASSIGNMENT OF ERROR

{¶ 8} "The trial court erred by accepting appellant's plea to count two of the indictment because the indictment was defective."

{¶ 9} Defendant complains that the indictment in his case is fatally defective because it charged him with possessing a particular controlled substance, crack cocaine, that is different from the controlled substance he actually possessed, powder cocaine.

{¶ 10} At the outset, we note that defendant failed to object to any defect in the indictment prior to trial as required by Crim.R. 12(C)(2). Such a failure ordinarily constitutes a waiver of the objection. Crim.R. 12(H). However, upon a finding of plain error, a court may grant relief from the waiver. Crim.R. 12(H). Plain error does not exist unless it can be said that but for the

error the outcome of the trial would clearly have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

{¶ 11} Count two of the indictment charged defendant with knowingly possessing *crack* cocaine. The indictment states:

{¶ 12} "On or about March 6, 2005 in Miami County, Ohio Ramon M. Yslas, violated Ohio Revised Code § 2925.11(A)(C)(4)(b) in that he did, knowingly obtain, possess, or use a Schedule II controlled substance, to wit: Crack–Cocaine, in an amount that equals or exceeds five grams but is less than twenty-five grams, thus against the peace and dignity of the State of Ohio."

{¶ 13} The evidence, including the testimony of Trooper Eldridge at the suppression hearing, unequivocally demonstrates that the cocaine defendant possessed was in fact *powder* cocaine, not crack cocaine. Powder cocaine and crack cocaine are different controlled substances. See R.C. 2925.01(X) and (GG) and R.C. 2925.11(C)(4)(b). The distinction is important because the type of cocaine or controlled substance possessed, in conjunction with its amount, determines the degree of the offense and thus the potential penalties. See R.C. 2925.11(C)(4).

{¶ 14} Even though defendant's no-contest plea waived any error or defect in the sufficiency of the state's evidence or proof under which defendant was convicted, *State v. Hurt* (Mar. 3, 2006), Montgomery App. No. 21009, 2006-Ohio-990, 2006 WL 522388, including any variance between the particular controlled substance alleged in the indictment and that actually possessed by defendant, the more fundamental problem in this case is that count two of the indictment charges an offense that does not exist in the section of the Revised Code charged, R.C. 2925.11(C)(4), or any other.

{¶ 15} The cocaine-possession offense charged in count two was charged under R.C. 2925.11(A), which prohibits knowingly possessing a controlled substance, and (C)(4)(b) which provides:

{¶ 16} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

{¶ 17} "* * *

{¶ 18} "(b) If the amount of the drug involved equals or exceeds five grams but is less than twenty-five grams of cocaine that is not crack cocaine or equals or exceeds one gram but is less than five grams of crack cocaine, possession of cocaine is a felony of the fourth degree, and there is a presumption for a prison term for the offense."

{¶ 19} R.C. 2925.11(C)(4)(b) identifies two fourth-degree felonies arising from possession of cocaine. One involves possession of *powder cocaine* in an amount more than five but less than twenty-five grams by weight. The other involves possession of *crack cocaine* in an amount more than one but less than five grams by weight. The problem here is that count two of the indictment charged defendant with possession of *crack cocaine* in an amount more than five but less than 25 grams by weight, the quantity which R.C. 2925.11(C)(4)(b) applies to possession of powder cocaine. That section does not prohibit possession of crack cocaine in that same gross quantity. Therefore, count two of the indictment to which defendant entered a plea of no contest fails to charge a valid statutory offense.

{¶ 20} Section 10, Article I of the Ohio Constitution guarantees the accused that the essential facts constituting the offense for which he is charged will be found in the grand jury's indictment. *Harris v. State* (1932), 125 Ohio St. 257, 181 N.E. 104; *State v. Wozniak* (1961), 172 Ohio St. 517, 18 O.O.2d 58, 178 N.E.2d 800; *State v. Shuttlesworth* (1995), 104 Ohio App.3d 281, 661 N.E.2d 817. The identity of a controlled substance involved in a drug offense is an essential element of the crime that must be included in the indictment. The omission of that information cannot be cured by amendment pursuant to Crim.R. 7(D), because to do so would change the very identity of the offense charged. *State v. Headley* (1983), 6 Ohio St.3d 475, 6 OBR 526, 453 N.E.2d 716; *Wozniak*; *Shuttlesworth*.

{¶ 21} The indictment charged defendant with possessing a particular controlled substance, crack cocaine, that is not only different from the controlled substance that he actually possessed, powder cocaine, but in a gross amount that does not constitute an offense under R.C. 2925.11(C)(4)(b). Accordingly, plain error exists, and defendant's conviction and sentence for possession of cocaine must be reversed.

{¶ 22} Defendant's first assignment of error is sustained.

SECOND ASSIGNMENT OF ERROR

{¶ 23} "The trial court erred by overruling defendant's motion to suppress evidence and statements because they were unlawfully obtained."

{¶ 24} In a motion to suppress, the trial court assumes the role of the trier of fact, and as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137.

{¶ 25} Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. If we accept those facts as true, we must then independently determine as a matter of

law, without deference to the trial court's legal conclusions, whether they meet the applicable legal standard. *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498.

{¶ 26} Defendant first argues that the initial stop of the vehicle in which he was riding was unlawful because police lacked sufficient reasonable suspicion of criminal activity to justify the stop. We disagree.

{¶ 27} Trooper Eldridge testified that he observed the vehicle drift over the right edge line of its lane of travel on two occasions as it traveled north on I–75. That constitutes a traffic offense, a marked-lanes violation per R.C. 4511.33, which provides sufficient probable cause to stop the vehicle. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.

{¶ 28} Defendant next argues that Trooper Eldridge unlawfully prolonged the traffic stop in order to allow a drug-detection dog to be brought to the scene. Again, we disagree. In *State v. Kuralt*, Montgomery App. No. 20532, 2005-Ohio-4529, 2005 WL 2087581, ¶ 10–11, this court stated:

{¶ 29} "[T]he duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop and issue a traffic citation, absent specific and articulable facts that demonstrate a reasonable suspicion of criminal activity other than the traffic violation that justifies continued detention. *State v. Brown* (July 30, 2004), Montgomery App. No. 20336, 2004-Ohio-4058, 2004 WL 1730132; *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523; *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237; *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343, 685 N.E.2d 762. When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue a traffic citation and perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. *Ramos, supra; State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599, 657 N.E.2d 591. These investigative duties must be performed diligently. Id.

{¶ 30} "A canine sniff by a drug detection dog of the exterior of a vehicle lawfully detained for a traffic stop does not implicate Fourth Amendment rights. *Illinois v. Caballes* (Jan. 24, 2005), 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842; *State v. Ramos, supra; State v. Heard* (March 7, 2003), Montgomery App. No. 19323, 2003-Ohio-1047 [2003 WL 860692]. Police are not required to have reasonable suspicion that a vehicle contains drugs prior to conducting a canine sniff of the vehicle during a traffic stop, so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation. *Ramos, supra.* If, however, the duration of the traffic stop is extended in order to bring a drug sniffing dog to

the scene, police must have a reasonable suspicion that the vehicle contains drugs in order to justify the continued detention.   Id."

{¶ 31} The trial court found that during the traffic stop, additional reasonable suspicion of criminal activity other than the traffic violation arose, which made continued detention reasonable while police investigated.   We agree.   The specific articulable facts that justified continued detention are that the driver of the truck, Rodriguez, was very nervous and his hands were shaking.   Rodriguez told Trooper Eldridge that he and his passenger, defendant Yslas, were coming from Las Vegas going to Piqua, Ohio, for one or two days of vacation.   The truck had Nevada license plates.   Rodriguez, however, said that he was not visiting friends in Piqua, that he did not know anyone in Piqua, and he could not tell Trooper Eldridge where in Piqua he was going once he arrived there.

{¶ 32} After Trooper Eldridge spoke to Rodriguez, he approached the truck to speak with the defendant and noticed that the truck bed was filled with luggage. Defendant was very nervous, visibly shaking, and avoided eye contact with Trooper Eldridge.   Defendant told Trooper Eldridge that he and Rodriguez were coming from Dayton and going to Toledo to look for work.   Defendant indicated that they were planning to stay only one day in Toledo.   When Trooper Eldridge asked defendant whether there was anything illegal in the truck that was making him so nervous, defendant replied: "In what sense?"   Concerned because several drug courier indicators were present, Trooper Eldridge requested that a drug-detection dog be brought to the scene.   After making that request, Trooper Eldridge again spoke to the driver, Rodriguez.

{¶ 33} Trooper Eldridge asked Rodriguez whether he was looking for work. Rodriguez responded: "Not really."   After advising Rodriguez of his *Miranda* rights, Trooper Eldridge asked him whether he was responsible for everything in the truck and whether the truck contained any marijuana.   Rodriguez responded: "I don't know.   Why do you say that?"   When Trooper Eldridge then asked Rodriguez whether it was possible that there was something illegal in the truck, Rodriguez replied: "Yes, it's possible."

{¶ 34} Defendant's somewhat metaphysical responses created more suspicion than they dispelled, and after other troopers and the drug-detection dog arrived on the scene, defendant was asked to exit the truck and sit in one of the police cruisers.   Trooper Eldridge asked defendant to remove the fanny pack he was wearing, for safety reasons, because Eldridge was aware that some fanny packs are especially designed to carry concealed weapons.   Defendant complied and left the fanny pack in the truck's passenger compartment.   Officers did not frisk defendant or the fanny pack for weapons.

{¶ 35} The drug-detection dog arrived on the scene at 6:43 p.m., approximately 15 minutes after this traffic stop began. The dog alerted to the truck, which provided probable cause to search the truck for drugs. *State v. Johnson*, Montgomery App. No. 20624, 2005-Ohio-1367, 2005 WL 678922; *Kuralt*. A search of the truck revealed several baggies containing powder cocaine and $2,000 in cash in the fanny pack defendant had been wearing. Defendant was read his *Miranda* rights and subsequently told police that there was a large quantity of marijuana in the rear of the truck. A search of the truck bed disclosed 760 pounds of marijuana.

{¶ 36} On this record, continued detention of Rodriguez and defendant was justified by the ever increasing and escalating reasonable suspicion of criminal activity. Defendant's Fourth Amendment rights were not violated by the prolonged detention in this case.

{¶ 37} Finally, defendant contends that his arrest was unlawful because there was no probable cause to believe that he had committed or was about to commit a crime. The evidence, however, demonstrates that although defendant was subject to an investigatory detention by police during the canine open-air sniff and subsequent search of the truck, defendant was not actually arrested until after police discovered drugs inside the truck, including powder cocaine in the fanny pack defendant had been wearing. Defendant's arrest was clearly supported by probable cause. No violation of defendant's Fourth Amendment rights has been demonstrated.

{¶ 38} Defendant's second assignment of error is overruled.

{¶ 39} Having sustained the first assignment of error, we reverse defendant's conviction and sentence for possessing cocaine. Otherwise, defendant's conviction and sentence for possessing marijuana is affirmed.

Judgment reversed in part
and affirmed in part.

WOLFF, P.J., and GLASSER, J., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.