[Cite as *State v. Pearson*, 2021-Ohio-520.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-11 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-190 |
| | : | |
| SHELDON K. PEARSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of February, 2021.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellee

TRAVIS DUNNINGTON, Atty. Reg. No. 0096519, 117 South Main Street, Suite 400, Dayton, Ohio 45422
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Sheldon K. Pearson, appeals from his conviction in the Champaign County Court of Common Pleas after he pled guilty to one count of aggravated possession of drugs and one count of failure to appear as required by recognizance.  In support of his appeal, Pearson claims that the trial court erred by imposing consecutive sentences.  Pearson also claims that the trial court erred by accepting his guilty plea to the failure-to-appear charge because the charging indictment was defective in that it did not include all essential elements of that offense.  For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On August 5, 2019, a Champaign County Grand Jury returned an indictment charging Pearson with one count of aggravated trafficking in drugs, a fourth-degree felony, and one count of aggravated possession of drugs, a fifth-degree felony.   The trial court thereafter released Pearson on a personal recognizance bond and ordered Pearson to appear for an arraignment hearing on August 26, 2019.   However, Pearson failed to appear, and the trial court issued a capias for his arrest.   Shortly thereafter, Pearson telephoned the trial court and explained that he had been mistaken about the time of the arraignment hearing.   As a result, the arraignment hearing was continued to later in the day on August 26th.   Pearson thereafter appeared at the arraignment hearing and entered a plea of not guilty to the indicted charges.   The trial court then recalled the capias and reinstated Pearson's personal recognizance bond.

{¶ 3} On September 5, 2019, the trial court was advised that Pearson had violated the conditions of his bond by testing positive for cocaine, methamphetamine,

amphetamine, MDMA, alcohol, and THC. Although it found Pearson guilty of the bond violation, the trial court continued Pearson's personal recognizance bond. The trial court, however, advised Pearson that his bond violation would be a sentencing factor if he were convicted, and that he would be incarcerated pending his trial if he violated his bond again.

{¶ 4} Three weeks after the trial court continued Pearson's personal recognizance bond, Pearson's pretrial services officer notified the trial court of another bond violation. Specifically, it was alleged that Pearson failed to attend two pretrial services appointments on September 6 and 20, 2019, and several TCN counseling treatment sessions. As a result of these alleged violations, the matter was set for a bond violation hearing on October 3, 2019. Pearson failed to attend the hearing.

{¶ 5} Due to Pearson's failure to attend the bond violation hearing, the trial court suspended Pearson's personal recognizance bond and issued a capias for his arrest. Pearson was also indicted on one count of failure to appear as required by recognizance in violation of R.C. 2937.29 and R.C. 2937.99(A)/(B), a felony of the fourth degree.

{¶ 6} On October 25, 2019, after Pearson was taken into custody, Pearson appeared at an arraignment hearing for the failure-to-appear charge and pled not guilty to the failure-to-appear charge; the trial court continued the suspension of Pearson's bond. Then, on November 7, 2019, the trial court released Pearson on a bail bond in the sum of $10,000. The bail bond included several standard and special conditions. These conditions included, but were not limited to, Pearson's being placed on house arrest via electronic home monitoring and his not possessing or using any controlled substances.

{¶ 7} On December 16, 2019, the trial court held a hearing on Pearson's alleged bond violations. During the hearing, the trial court found Pearson guilty of the earlier violations for failing to attend two pretrial services appointments and several TCN counseling treatment sessions. Also during this hearing, Pearson admitted to violating his bond by failing to attend the October 3, 2019 bond violation hearing. Pearson further admitted to violating his bond on December 12, 2019, by testing positive for THC. The trial court found Pearson guilty of all the admitted bond violations and continued his bond with the modification that Pearson's brother was not permitted to visit his residence for any reason.

{¶ 8} Following the bond violation hearing, Pearson pled guilty to aggravated possession of drugs and failure to appear as required by recognizance. In exchange for Pearson's guilty plea, the State agreed to dismiss the charge for aggravated trafficking in drugs and to recommend a presentence investigation ("PSI") for purposes of sentencing. The State also agreed to recommend community control sanctions with special conditions if Pearson had no criminal history other than what was disclosed in his discovery packet. It was agreed that if Pearson's PSI revealed any additional criminal history, or if Pearson was charged with another criminal offense or violated the conditions of his bond, the State was not bound to its recommendation of community control. Pearson further agreed to pay court costs and any court-appointed counsel fees that may be imposed at sentencing.

{¶ 9} After conducting a plea colloquy, the trial court accepted Pearson's guilty plea, ordered a PSI, and scheduled the matter for sentencing on January 9, 2020. Then, one day after Pearson entered his guilty plea, the trial court received notice of an alleged bond violation for Pearson's failing to abide by his house arrest. Specifically, it was

alleged that on December 16, 2019, Pearson engaged in unauthorized travel to a McDonalds in Urbana, Ohio. In light of this allegation, the trial court scheduled a bond violation hearing to take place at the time of Pearson's sentencing hearing.

{¶ 10} On December 30, 2019, the trial court received notice of two more alleged bond violations. It was alleged that on December 23, 2019, Pearson engaged in unauthorized travel to a business in St. Paris, Ohio, and that on December 25, 2019, Pearson engaged in unauthorized travel to a residence in St. Paris, Ohio. The trial court ordered these alleged bond violations to also be heard at the time of Pearson's sentencing hearing.

{¶ 11} On January 7, 2020, the trial court received yet another notice of Pearson's violating his bond. This time it was alleged that on January 6, 2020, Pearson engaged in unauthorized travel to a residence in St. Paris, Ohio, and allowed the battery in his electronic home monitoring device to go uncharged. Again, the trial court ordered these allegations to be heard at the time of Pearson's sentencing hearing. The trial court also suspended Pearson's bond and issued a capias for his arrest.

{¶ 12} On January 9, 2020, Pearson failed to appear at his sentencing hearing. Pearson was thereafter arrested on February 25, 2020. The sentencing and bond violation hearings were then rescheduled for March 3, 2020. At the bond violation hearing, Pearson admitted to all the alleged bond violations and the trial court found him guilty of the violations. The trial court thereafter advised the State that, in light of Pearson's bond violations, the State was no longer bound by its agreement to recommend community control sanctions at sentencing.

{¶ 13} During the sentencing hearing, the trial court found that pursuant to R.C.

2929.13(B)(1)(b), Pearson was not amenable to community control sanctions because of his bond violations and because he had previously served a prison term. The trial court then sentenced Pearson to 9 months in prison for aggravated possession of drugs and 18 months in prison for failure to appear as required by recognizance. The trial court ordered those sentences to be served consecutively for a total prison term of 27 months. The trial court also ordered Pearson to pay a $250 fine, court costs, and court-appointed counsel fees.

{¶ 14} Pearson now appeals from his conviction, raising two assignments of error for review.

## First Assignment of Error

{¶ 15} Under his first assignment of error, Pearson contends that the trial court erred by imposing consecutive sentences. Although Pearson does not dispute that the trial court made the statutorily-required findings for imposing consecutive sentences under R.C. 2929.14(C)(4), Pearson asserts that his sentence should be vacated because those findings were not supported by the record. We disagree.

{¶ 16} Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)  At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)  The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 17} "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]"  *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings."  *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.).  *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22 ("R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under * * * [R.C. 2929.14(C)(4)]").  This is a very deferential standard of review, as "the

question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." (Citation omitted.) *Withrow* at ¶ 38. In applying that standard of review, "the consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result." (Citation omitted.) *Id.* at ¶ 39.

{¶ 18} As previously noted, Pearson does not dispute that the trial court made the consecutive-sentence findings required by R.C. 2929.14(C)(4) at the sentencing and in the sentencing entry. Indeed, the record establishes that the trial court found that: (1) consecutive sentences were necessary to protect the public from future crime and to punish Pearson; (2) consecutive sentences were not disproportionate to the seriousness of Pearson's conduct and the danger he poses to the public; (3) Pearson committed one or more of his offenses while he was awaiting trial or sentencing; and (4) Pearson's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him.

{¶ 19} Pearson contends, however, that the record does not support these findings. Specifically, Pearson claims that the record does not support a finding that consecutive sentences were necessary to protect the public from future crime by him or that consecutive sentences were not disproportionate to the danger he poses to the public. To support this claim, Pearson argues that his convicted criminal behavior— possessing a small amount of methamphetamine and failing to appear at court—did not jeopardize the health and safety of anyone but himself.

{¶ 20} Nevertheless, for purposes of sentencing, this court " 'is not confined to

[considering] the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt.' " *State v. Waggoner*, 2d Dist. Montgomery No. 28453, 2020-Ohio-212, ¶ 12, quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). Sentencing courts may consider "facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a PSI report." *State v. Bautista*, 2d Dist. Clark No. 2015-CA-74, 2016-Ohio-5436, ¶ 12, citing *State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8; *Bowser* at ¶ 15; *State v. McNeil*, 2d Dist. Clark No. 2019-CA-51, 2020-Ohio-3202, ¶ 14.

{¶ 21} The record establishes that Pearson had a third charge for aggravated trafficking in drugs that was dismissed pursuant to a plea agreement. Concerning that charge, the PSI report indicated that law enforcement officers discovered several items of drug paraphernalia inside of Pearson's residence. The officers also discovered three individuals in the home using methamphetamine with Pearson. Two of the three individuals were on probation and one of them had a warrant for her arrest. When interviewed by the officers, Pearson admitted to giving methamphetamine to the individual with the warrant and to using methamphetamine himself. Because Pearson's criminal conduct involved him providing individuals with drugs and a place to use drugs, we cannot say that the record clearly and convincingly fails to support the trial court's finding that there was a need to protect others from Pearson's criminal conduct and to punish him.

{¶ 22} We also cannot say that the record clearly and convincingly fails to support the trial court's finding that consecutive sentences were not disproportionate to the danger Pearson posed to the public, as Pearson had an extensive criminal record. Between

1995 and 1999, Pearson received juvenile adjudications for assault, theft, counterfeit controlled substance, and criminal trespass. Then, over the next 20 years, Pearson received felony convictions for receiving stolen property, breaking and entering, theft, burglary, complicity to felonious assault, menacing by stalking, telecommunications harassment, domestic violence, and forgery. Pearson also had multiple OVI convictions, community control violations, and several misdemeanor convictions for assault, criminal trespass, underage consumption, disorderly conduct, driving under suspension, telephone harassment, theft, receiving stolen property, possession of drugs, possession of drug paraphernalia, and unauthorized use of property.

{¶ 23} Although Pearson does not dispute his criminal history, he argues that the record failed to support the trial court's finding under R.C. 2929.14(C)(4)(c), i.e., that his criminal history demonstrated a need to protect the public from future crime by him. We could not disagree more. The PSI report established that Pearson had continually flouted the law over the past 24 years by engaging in a wide range of criminal activity that involved violence, drugs, alcohol, theft, and deception. The PSI also established that Pearson had not responded favorably to past sanctions, which included several fines, probation, substance abuse treatment, and multiple jail and prison sentences. Given the nature and extent of Pearson's criminal record and his unfavorable response to previously-imposed sanctions, we cannot say that the record clearly and convincingly failed to support the trial court's finding that Pearson's criminal history demonstrated a need to protect the public from future crime by him.

{¶ 24} That said, even if the record had not supported the trial court's criminal-history finding under R.C. 2929.14(C)(4)(c), the trial court also made a finding under R.C.

2929.14(C)(4)(a), i.e., that Pearson committed one or more of the multiple offenses while he was awaiting trial or sentencing. This finding is not in dispute and was not unsupported by the record, as Pearson committed the offense of failure to appear as required by recognizance while he was awaiting trial/sentencing. Because only one of the three findings under division (a) through (c) of R.C. 2929.14(C)(4) must be present, the trial court's finding under division (a) was sufficient to impose consecutive sentences. Therefore, for all the foregoing reasons, Pearson's claim that the record failed to support the trial court's consecutive-sentence findings lacks merit.

{¶ 25} Pearson's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 26} Under his second assignment of error, Pearson contends that the trial court erred by accepting his guilty plea to failure to appear as required by recognizance in violation of R.C. 2937.29 and R.C. 2937.99(A) and (B). In support of this claim, Pearson argues that the charging indictment was defective because it did not specify that Pearson had been released on his *own* recognizance, but simply stated that he "fail[ed] to appear as required by recognizance." Pearson asserts that being released on his *own* recognizance was an essential element of the offense at issue, and that the failure to include that element in the indictment warrants vacating his conviction. Pearson, however, waived this claim for appeal.

{¶ 27} This court has consistently held that "a defendant waives any deficiency in the indictment by failing to object to the indictment and pleading guilty to the offense." *State v. Edwards*, 2d Dist. Montgomery No. 22648, 2009-Ohio-1408, ¶ 34, citing *State v.*

*Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 73; *State v. Easter*, 2d Dist. Montgomery No. 22487, 2008-Ohio-6038, ¶ 27*; State v. Portis*, 2d Dist. Clark No. 2008-CA-62, 2009-Ohio-3770, ¶ 4; *State v. Akhmedov*, 2d Dist. Montgomery No. 28185, 2019-Ohio-3586, ¶ 10. "This is true even when an indictment fails to include an essential element of the charged offense." (Citations omitted.) *Portis* at ¶ 4.

{¶ 28} Pearson concedes that he did not object to the alleged deficiency in the indictment at the trial court level and that he has waived all but plain error for appeal. *See State v. Baker*, 2018-Ohio-3925, 119 N.E.3d 987, ¶ 12 (2d Dist.) ("[a]n objection to an indictment that is not raised prior to trial or entering a plea as required by Crim.R. 12(C)(2) is waived unless it constitutes plain error"). "An error qualifies as plain error only if the error is obvious and but for the error the outcome of the proceeding clearly would have been otherwise." (Citation omitted.) *State v. Molen*, 2d Dist. Montgomery No. 21941, 2008-Ohio-6237, ¶ 9. "The burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 29} In an attempt to establish plain error, Pearson cites this court's holding in *State v. Yslas*, 2007-Ohio-5646, 173 Ohio App.3d 396 (2d Dist.). In *Yslas*, count two of the defendant's indictment included a fourth-degree felony charge for possession of crack cocaine "in an amount that equals or exceeds *five grams but is less than twenty-five grams*" in violation of R.C. 2925.11(C)(4)(b). (Emphasis added.) *Id.* at ¶ 12. The defendant entered a no contest plea to the charge and thereafter appealed from his conviction. On appeal, the defendant argued that the trial court erred in accepting his no

contest plea because his indictment was fatally defective in that it charged him with possessing crack cocaine when he actually possessed powder cocaine. *Id.* at ¶ 9. Because the defendant never raised an objection to the indictment in the court below, we found that he had waived all but plain error for appeal. *Id.* at ¶ 10.

{¶ 30} After reviewing the matter, we held that: "Even though defendant's no-contest plea waived any error or defect in the sufficiency of the state's evidence or proof under which defendant was convicted, * * * including any variance between the particular controlled substance alleged in the indictment and that actually possessed by defendant, *the more fundamental problem in this case is that count two of the indictment charges an offense that does not exist in the section of the Revised Code charged, R.C. 2925.11(C)(4), or any other.*" (Emphasis added.) *Id.* at ¶ 14. We noted that under R.C. 2925.11(C)(4)(b), an individual commits fourth-degree felony possession of crack cocaine if he or she possesses crack cocaine in an amount that "equals or exceeds *one gram but is less than five grams.*" (Emphasis added.) *Id.* at ¶ 18. We then explained that:

> The problem here is that count two of the indictment charged defendant with possession of crack cocaine in an amount more than five but less than 25 grams by weight, the quantity which R.C. 2925.11(C)(4)(b) applies to possession of powder cocaine. That section does not prohibit possession of crack cocaine in that same gross quantity. Therefore, count two of the indictment to which defendant entered a plea of no contest fails to charge a valid statutory offense.

> Section 10, Article I of the Ohio Constitution guarantees the accused

that the essential facts constituting the offense for which he is charged will be found in the grand jury's indictment. * * * The identity of a controlled substance involved in a drug offense is an essential element of the crime that must be included in the indictment. The omission of that information cannot be cured by amendment pursuant to Crim.R. 7(D), because to do so would change the very identity of the offense charged.

(Citations omitted.) *Yslas*, 2007-Ohio-5646, 173 Ohio App.3d 396 at ¶ 19-20.

{¶ 31} In light of this, we found plain error existed because "[t]he indictment charged defendant with possessing a particular controlled substance, crack cocaine, that is not only different from the controlled substance that he actually possessed, powder cocaine, but in a gross amount that does not constitute an offense under R.C. 2925.11(C)(4)(b)." *Id.* at ¶ 21. We therefore reversed the defendant's conviction for possession of crack cocaine. *Id.*

{¶ 32} Pearson attempts to analogize *Yslas* by claiming that the indictment in the instant case charged him with an offense that does not exist under the Ohio Revised Code. Specifically, Pearson claims that under R.C. 2937.99, the offense of failure to appear as required by recognizance includes the essential element of being placed on an own-recognizance bond, an element that Pearson claims was absent from the indictment. For this reason, Pearson claims that the indictment charged him with a non-existent offense, which resulted in plain error that warrants the reversal of his conviction. We disagree.

{¶ 33} Although we agree with Pearson's claim that R.C. 2937.99 only criminalizes a defendant's failure to appear when he is released on his own recognizance per R.C.

2937.29, *see State v. Fusik*, 4th Dist. Athens No. 04CA28, 2005-Ohio-1056, ¶ 11; we nevertheless find that Pearson's indictment provided sufficient notice of the own-recognizance element and thus correctly charged Pearson with an existing offense under R.C. 2937.99.   We reach this conclusion because Pearson's indictment charged him with violating R.C. 2937.29 and R.C. 2937.99(A)/(B).   R.C. 2937.29 provides that an "accused may be released on his own recognizance" and that "a failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in [R.C. 2937.99]."   Pursuant to R.C. 2937.99(A), "[n]o person shall fail to appear as required after having been released pursuant to [R.C. 2937.29]" and "[w]hoever violates this section is guilty of failure to appear and shall be punished as set forth in division (B) or (C) of this section."   Section (B) of the statute then goes on to provide that: "If the release was in connection with a felony charge or pending appeal after conviction of a felony, failure to appear is a felony of the fourth degree."   R.C. 2937.99(B).

{¶ 34} Pearson's indictment closely tracks the foregoing statutory language and charged the failure-to-appear offense as a fourth-degree felony.   The indictment specifically alleged that Pearson "did fail to appear as required by recognizance and the release was in connection with a felony charge or pending appeal after conviction of a felony."   Although the indictment did not specifically include the phrase "own recognizance," it did refer to a violation of R.C. 2937.29, which pertains solely to releasing an accused on his own recognizance.   Given the reference to R.C. 2937.29, the indictment sufficiently included the own-recognizance element and fairly informed Pearson of the charged offense.   *See State v. Cassel*, 2016-Ohio-3479, 66 N.E.3d 318, ¶ 19 (2d Dist.), citing *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d

1162, ¶ 9 and *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 45 ("An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense."). Therefore, unlike in *Yslas*, Pearson's indictment charged him with a valid statutory offense.

{¶ 35} For the foregoing reasons, we are not convinced that the indictment contained an obvious error for purposes of the plain-error analysis. Even if the absence of the phrase "own recognizance" in the indictment had been an obvious error, unlike *Yslas*, that error did not affect the identity of the charged offense. Moreover, Pearson failed to argue, let alone demonstrate, that he would not have entered his guilty plea had the phrase "own recognizance" appeared in the indictment. Therefore, Pearson did not satisfy his burden to establish that the outcome of the proceeding would have been different but for the alleged error. Accordingly, for all the foregoing reasons, Pearson has failed to establish plain error for purposes of reversing his conviction.

{¶ 36} Pearson's second assignment of error is overruled.

## Conclusion

{¶ 37} Having overruled both of Pearson's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Samantha B. Whetherholt
Travis Dunnington
Hon. Nick A. Selvaggio